### MANN v. GADDIE.

(Circuit Court of Appeals, Fifth Circuit. December 24, 1907.)

No. 1,619.

1. RECEIVERS—APPOINTMENT WITHOUT NOTICE—STATUTES.

Civ. Code Ga. 1895, § 4904, providing that, under extraordinary circumstances, a receiver may be appointed without notice, is merely confirmatory of a principle of equity jurisdiction authorizing the appointment of a receiver without notice in cases of urgent emergency.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Receivers, §§ 54-60.]

2. SAME.

A receiver may be appointed without notice if the defendant is beyond the jurisdiction of the court or cannot be found, or some urgent emergency is shown rendering interference before there is time to give notice necessary to prevent waste, destruction, or loss of the property, or in case notice will jeopardize the safety of the property over which the receivership is to be extended.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Receivers, §§ 54-60.]

3. SAME—PARTNERSHIP—DISSOLUTION AND ACCOUNTING.

The rule that a receiver shall not be appointed without notice except in case of urgent necessity is applicable to a suit by one partner against another for an accounting and for dissolution of the firm.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Receivers, §§ 54-60.]

4. SAME—GROUNDS.

Plaintiff, defendant, and two others formed a partnership for the purchase and sale of timber rights and lands; it being agreed that defendant and W. should secure options on timber and timber lands, and that plaintiff and the fourth member of the firm should secure purchasers therefor. Defendant and W. obtained options, escrow deeds, and leases, but plaintiff and his partner were unable to procure purchasers, whereupon defendant obtained a purchaser and denied plaintiff's right to participate in the profits of the transaction. *Held* insufficient to justify the appointment of a receiver without notice to take charge of such options, etc., in a suit by plaintiff for dissolution of the partnership and for an accounting; it appearing that defendant was solvent and willing to give a bond to secure plaintiff's interest in the profits, if any.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Receivers, §§ 54-60.]

5. APPEAL—RECEIVERS—APPOINTMENT—STAY.

Act March 3, 1891, c. 517, 26 Stat. 828 [1 U. S. Comp. St. 1901, p. 550], allowing appeals from interlocutory orders appointing receivers, and providing that the proceedings in other respects shall be stayed unless otherwise ordered by the court, or by the appellate court or a justice thereof, is sufficient to afford the defendant relief in a case where receivers are improperly appointed, whether with or without notice.

6. SAME—INTERLOCUTORY ORDERS—JURISDICTIONAL QUESTIONS.

No appeal lies from an order of a federal court refusing to dismiss a case for want of jurisdiction; defendant's objection to the jurisdiction being reviewable only after final decree.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 2, Appeal and Error, §§ 367, 417, 648.]

7. SAME—DISMISSAL OF BILL.

On appeal from an order appointing a receiver, the appellate court will render a final decree dismissing the bill if it appears that there is no equity therein, or that the court has no jurisdiction.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, § 4575.]

8. COURTS—FEDERAL COURTS—DIVERSE CITIZENSHIP—ARRANGEMENT OF PARTIES.

In a suit in a federal court in which jurisdiction depends on citizenship, the court will arrange the parties as plaintiffs and defendants according to their interest, and, if such arrangement defeats the jurisdiction, the bill will be dismissed.

Appeal from Circuit Court of the United States for the Southern District of Georgia.

For opinions below, see 147 Fed. 955, 960.

Isaac Hardeman, Geo. S. Jones, and A. L. Miller (Miller & Jones, Hardeman & Jones, Haygood & Cutts, and W. A. Wooten, on the brief), for appellant.

John I. Hall and Olin J. Wimberly, for appellee.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge. This is a suit brought by W. M. Gaddie, alleging that he is a citizen of North Carolina, against Frank R. Mann, Thomas J. Wooten, and C. M. Wise, all citizens of Georgia, the Citizens' Bank of McRae, a corporation under the laws of Georgia, and T. P. Trigg and W. E. White, partners composing the firm of Trigg & White, citizens of Virginia. The bill alleges the making of the following contract:

"Georgia, Telfair County:

"This agreement made and entered into, this 29th day of November, 1904, by and between Frank Mann, Thomas J. Wooten, W. M. Gaddie and C. M. Wise, whereby the said parties are offering for sale a tract of land on the Ocmulgee river (about 17,000 acres) and the said C. M. Wise is to have the sale of said property, and in case of a sale then all parties hereto to share equally in the net profits of said sale.           F. R. Mann.

"Thomas J. Wooten.
"W. M. Gaddie.
"C. M. Wise.

"Witness: A. J. Walker, J. P."

It is alleged that under this contract Mann and Wooten were to secure options on timber and timber lands, and that Wise and Gaddie were to secure purchasers therefor, the profits to be equally divided be-

tween the four; that Mann and Wooten secured the options, which, in some instances, consisted of escrow deeds and leases, and that these options, deeds, and leases were placed in the Citizens' Bank of McRae, which was to deliver them when the agreed purchase money was paid; that Gaddie and Mann were unable to find a purchaser, and that in 1906 Mann, in whose name the options were taken, secured a purchaser in Trigg & White, who paid $5,000 in cash, and were ready to pay the balance of the purchase money, and that Mann had excluded and ignored Gaddie and Wise, and was denying that they had any interest in the profits. Gaddie, the complainant, therefore prayed for an injunction to prevent the consummation of the trade with Trigg & White and the delivery of the options, deeds, and leases by the bank, for the appointment of a receiver for the options, deeds, and leases, and for an accounting from Mann for his interest in the contract.

After the bill was filed, orders were made granting an injunction and appointing a receiver. From the interlocutory order appointing a receiver, this appeal is taken.

The 10 assignments of error may be condensed or grouped for the purpose of this decision:

First. The court erred in appointing a receiver and in granting the injunction, and in not accepting a bond tendered by Mann.

Second. The court erred in not dismissing the case for want of jurisdiction.

1. The bill was presented to the judge and indorsed "Filed" on June 29, 1906, and on the same day the judge made an order at chambers appointing J. A. Dunwoody "temporary" receiver, and ordered him to take possession of the property described in the bill and all moneys arising from the sale of any property described in the bill. An injunction was also issued as prayed for. The learned judge in appointing the receiver held that the case made by the bill was one of "urgency, and which, under the provisions of the Georgia Code, render proper the appointment of a receiver." No notice was given the defendants that an application would be made to appoint a receiver. The Georgia statute provides that:

"Under extraordinary circumstances a receiver may be appointed before and without notice to the trustee or other person having charge of the assets." Civ. Code Ga. 1895, § 4904.

We have had occasion heretofore to decide that this statute is only confirmatory of a principle of equity procedure and jurisdiction. Joseph Dry Goods Co. v. Hecht, 120 Fed. 760, 764, 57 C. C. A. 64. In the absence of this statute, under extraordinary circumstances, a court of equity may appoint a receiver without notice. The extraordinary circumstances referred to in the statute are the exceptional cases which sometimes occur, and which make it necessary that the court should have the power to act without notice to the defendant. A defendant may be beyond the jurisdiction of the court, or cannot be found, or some urgent emergency may be shown rendering interference, before there is time to give notice, necessary to prevent waste, destruction, or loss; or a case may arise in which notice itself would jeopard the safety of the property over which the receivership is extended. Moritz

v. Miller, 87 Ala. 331, 6 South. 269. The jurisdiction, without notice, should never be exercised except in cases of imperious necessity, when the complainant's right is clear and can be protected in no other way. This is the rule wherever equity is administered (Alderson on Receivers, § 121), and has been enjoined and enforced by repeated decisions of this court. North American L. & T. Co. v. Watkins, 109 Fed. 101, 48 C. C. A. 254; Cabaniss v. Reco Mining Co., 116 Fed. 318, 54 C. C. A. 190; Joseph Dry Goods Co. v. Hecht, supra.

The rule is, of course, applied in receivership suits by one partner against another. McCarthy v. Peake, 18 How. Pr. 138.

Taking all the averments of the bill as true, no reason is shown for the appointment of a receiver without notice. We heartily indorse an observation of the Supreme Court of Ohio made in a case where the trial court had appointed a receiver without notice to the defendants:

"Under the circumstances of the case, the appointment of the receiver was an unwarranted exercise of judicial power, which it is the duty of this court to reverse and set aside." Railway Co. v. Jewett, 37 Ohio St. 649, 659.

2. Immediately after the making of the foregoing order appointing him receiver, Dunwoody demanded and received of the defendant Mann the option contracts described in the bill.

On July 17, 1906, Frank R. Mann, one of the defendants and the appellant in this court, filed a sworn motion in the court below, in which he alleged that the property in controversy consisted only of escrow deeds and options obtained by him for the purchase in fee simple of various tracts of land upon which there is a heavy growth of hardwood timber, and for options for long-term timber leases on other tracts of land; that all of these deeds and options were obtained from the owners of property by him and at his own expense, and that W. M. Gaddie had no right or interest in them; that some of the options had expired since the filing of complainant's bill; and that the others would soon expire, unless closed according to their terms; that, if the options were permitted to expire, it would result in the loss to him of many thousand dollars; that, if he is permitted to protect his rights in the options, he would be able to make a sale at a profit of several thousand dollars; that under the terms of the orders made by the court he was unable to take any steps to protect his rights and to prevent the options from expiring. He therefore moved the court that he be allowed to give a bond in such terms and upon such conditions as may be fixed by the court, to discharge any judgment or decree that may be recovered by the complainant against him, and that, upon the execution of the bond with such sureties as may be required by the order of the court, the temporary receiver heretofore appointed to take charge of the option contracts, and who now has the same in his possession, be directed to deliver them to this defendant. This motion by Mann to be allowed to give a bond came on to be heard on the 22d of September, 1906. At the same time the court heard the application for the appointment of a permanent receiver as prayed for in the bill, and for the granting of an injunction conformable to the prayer of the bill. The court on that day made a decree overruling and denying the motion of

Mann to be permitted to give a bond, and granted the application of the complainant for the appointment of a permanent receiver and the issuance of an injunction.

The claim of the complainant is that he is entitled as a partner to one-fourth of the net profits arising from the sale of certain lands on which the members of the partnership had obtained options. The complainant's claim is based on the written agreement between the partners made November 29, 1904, which is copied in the statement of the case. The complainant contends that the agreement was extended to additional lands—in all about 25,000 acres—and that Mann, through agents, had made a sale of part of these lands, and was endeavoring to deprive the complainant of his rightful share of the net profits. Mann's contention, as shown by the record, is to the effect that no sale was made within the time of the existence of the contract between himself, Gaddie, Wooten, and Wise, and that he now has the right to close the options and sell the lands, and that Gaddie will not be entitled to share in the net profits. The ultimate question to be decided when the case comes on for final decree on the merits is whether or not Gaddie is entitled to share in the net profits as claimed by him. On that question, we intimate no opinion, and refer to it only because it is necessary to do so in considering the assignments of error based on the decree refusing to permit Mann to give bond and appointing a receiver. The purpose of Gaddie's suit is to get a share of the profits arising from the sale of the land and the timber. The object of appointing the receiver is to protect him from loss. If it appear, therefore, that he is in no danger of loss because Mann is able to pay any decree he may obtain, a receiver should not be appointed. There is no ground for the appointment of a receiver where the facts show that, if the complainant obtains a decree, it can be collected—that he is in no danger of pecuniary loss. Alderson on Receivers, p. 640, § 448; Beach on Receivers, § 561.

The averments of the bill are directed towards Mann as the wrongdoer. The fear is that he will close the options, completing the purchase of the lands and timber, and make a sale of them, and not pay to the complainant his one-fourth of the net profits. The bill does not show Mann to be insolvent. It is alleged that the complainant "does not believe" that he owns property amounting to more than $12,000, and that he has not sufficient means to be compelled to respond in damages. Mann makes oath that he is the owner in his own right of $40,000 worth of property, and that he is amply solvent. In this affidavit he renews his offer to give bond for such an amount and upon such terms as may be required by the court. This evidence indicates that Mann is able to respond to any decree that Gaddie may obtain if he sustains his bill by proof. But, if this evidence was not sufficient to show his solvency, it must be remembered that he was in court offering to give a bond to secure the complainant in any sum for which he might obtain a decree.

In reversing an order appointing a receiver in a suit for the settlement of a partnership, the court said:

"It seems to me to be doing injustice to the defendant, in any case, to decide the whole of the disputed facts in favor of the plaintiff, in advance, without

proof to sustain his allegations, and especially unjust when the defendant proffers unquestioned security to the plaintiff against any possible loss." Buchanan v. Comstock, 57 Barb. (N. Y.) 568, 581.

In reversing the trial court for refusing a bond and appointing a receiver, the Supreme Court of Appeals of Virginia said:

"In such a case, where the claims are small in comparison with the property sought to be sequestrated, and unascertained, and no notice of the application has been given the defendants, and an offer is made to secure those claims should they be subsequently established by the giving of any bond that may be required, it seems to me that it would be utterly at war with a sound judicial discretion to take the property from the hands of those who have been legally charged with its custody." Va., T. & C. S. & I. Co. v. Wilder, 88 Va. 942, 946, 14 S. E. 806.

In Stillwell v. Savannah Grocery Co., 88 Ga. 100, 143, 13 S. E. 963, 970, Bleckley, C. J., speaking for the court, said: "It may be asserted as a general proposition that a bond with good security is always a better form of protecting creditors likely to be injured by fraud than the appointment of a receiver for property perishable in its nature or expensive to keep. And in most cases the liability of a solvent party without bond and security would itself be preferable to an expensive receivership." In that case the court held, as expressed in the syllabus:

"It was certainly error to appoint a receiver unconditionally, without offering the purchaser the alternative of giving bond and security in lieu of surrendering the property to a receiver."

Alderson, in his recent work on Receivers, says:

"If a partner be given full and adequate security against loss, there is no ground for the appointment of a receiver, inasmuch as the very reason for such an appointment is removed." Alderson on Receivers, § 449.

This principle was indorsed by Judge Simonton in Devereux v. Fleming (C. C.) 47 Fed. 177, and in Low v. Holmes, 17 N. J. Eq. 148.

3. The act which allows appeals from interlocutory orders granting or continuing injunctions or appointing receivers provides:

"That the proceedings in other respects in the court below shall not be stayed, unless otherwise ordered by that court, or by the appellate court or a judge thereof." Act March 3, 1891, c. 517, 26 Stat. 828 [1 U. S. Comp. St. 1901, p. 550].

This provision of the act affords a defendant a remedy in cases where the enforcement of the order would be unjust, and where great injury would occur before the case could be heard on appeal. In this case the defendant, after taking the appeal, applied to this court for an order staying the decree of the court below, and such order was granted upon his giving bond as provided for by the statute. This statute will afford defendants relief, where receivers are improperly appointed, whether with or without notice.

4. A motion was made by the defendant Mann to dismiss the bill for want of jurisdiction. We find in the record, also, a plea to the jurisdiction of the court. There is no decree on either the motion or the plea. In the argument at the bar, it was assumed that the court had overruled these defenses. If that were true, and it so appeared in the record, no appeal could be taken from such orders. The court

having refused to dismiss the case for want of jurisdiction, the defendant objecting to the jurisdiction must wait till a final decree before he is allowed an appeal. 2 Foster's Fed. Prac. (3d Ed.) § 503. It is true that, on appeal from an order appointing a receiver, if it appear that there is no equity in the bill, or if it appear that the court has no jurisdiction of the case, the appellate court could and should make a final disposition of the case. Smith v. Vulcan Iron Works, 165 U. S. 518, 17 Sup. Ct. 407, 41 L. Ed. 810. In Arkansas Southeastern Railroad Co. v. Union Sawmill Co. (May 30, 1907) 154 Fed. 304, 83 C. C. A. 224, we applied this rule where it appeared that a necessary party had been omitted, and that bringing such party into the case would defeat the jurisdiction of the court. That the omitted corporation was a necessary party in that case was shown by the contracts set up in the bill, and there was no dispute about its citizenship, for the purposes of jurisdiction, being the same as that of the complainant. In the case at bar the bill makes such allegations as show the jurisdiction of the court, and the evidence is contradictory as to the citizenship of the complainant. The controversy is whether he is a citizen of North Carolina or a citizen of Georgia, and the evidence on the point is in conflict. We are not satisfied that the parties have had full opportunity to present all the evidence they wish to offer on the question. The evidence presented has been by affidavit, affording no opportunity for cross-examination. Under the circumstances, we deem it not advisable to decide the question.

It is also urged that one of the defendants, Wise, should, on account of his interest, be arranged on the complainant's side of the case, and that, as Wise and the other defendants are citizens of the same state, this would defeat the jurisdiction of the court. It is true that this court would arrange the parties according to their interest as it appears from the record, and, when such arrangement defeats the jurisdiction, the bill would be dismissed. But the case has not been fully developed by a taking of all the evidence. We cannot tell how it may appear when the case is ready for hearing on the plea to the jurisdiction, and on the merits, if it should be heard on the merits in the court below. On this appeal, a want of jurisdiction not appearing on the face of the pleadings, and the evidence on questions relating to it being in conflict, and not having been taken on direct and cross-examination, we do not think it proper to decide the question.

The decree rendered September 22, 1906, appointing a receiver and granting an injunction, is reversed and the cause remanded, with instructions to tax all the costs and expenses incident to the receivership against the complainant, who moved for the appointment.