CELLA, ADLER & TILLES v. BROWN et al.

(Circuit Court, E. D. Missouri, E. D. March 1, 1905.)

1. FEDERAL COURTS—REMOVAL OF CAUSES—FILING PETITION—TIME—PRELIMINARY MOTIONS.

Where a petition for removal of a cause to the federal court is filed before the time fixed by the statute or the rules of court for the filing of an answer, petitioner's appearance and his hearing on a preliminary motion regarding an injunction did not constitute a waiver of his right to remove.

[Ed. Note.—For cases in point, see vol. 42, Cent. Dig. Removal of Causes, §§ 10, 208.]

2. SAME—SEPARABLE CONTROVERSY—PARTIES.

The parties who are not indispensable to the determination of a suit in the federal court may be dismissed or disregarded if their presence would oust or interfere with the jurisdiction of the court.

3. SAME.

Where, in a suit to avoid a scheme and contract of B. & Co. to reorganize certain railroads, and to enforce specific performance of B. & Co.'s contract to convey to complainants their share of certain pledged securities of the railroad companies, there was no allegation that the railroads had done or threatened to do any act in violation of, or to prevent performance of, the contracts, and the only prayer affecting the railroads was for an injunction to forbid them doing any act or taking any steps interfering with plaintiff's rights, which prayer was unsupported by any averment of fact, the railroads were not indispensable parties.

4. SAME.

Complainants, who were citizens of Missouri, sued B. & Co., nonresidents, to avoid a railroad reorganization contract and for specific performance of a contract of B. & Co. to convey to complainants their share of certain pledged securities of the railroads, without complainants consenting to certain alleged invalid conditions. The bill also alleged that defendant bank, of the same citizenship as complainants, through which the transaction was to be carried out, made the required payment of complainants' share of the railroads' indebtedness on complainants' refusal to consent to the conditions, and claimed the right to receive complainants' share of the securities, and demanded, as against the bank, that it be required to deliver to complainants their share of such securities on payment of their share of the indebtedness. Held that the bank was not a necessary party to the determination of the controversies between complainants and B. & Co., and that they were therefore entitled to remove the cause to the federal court.

Henry W. Bond, for complainants.

George W. Easley and Boyle, Priest & Lehmann, for defendants.

SANBORN, Circuit Judge. On October 31, 1904, the complainants, who are citizens of Missouri, filed in the circuit court of the city of St. Louis a bill in equity against the defendants, James Brown and others, copartners as Brown Bros. & Co., and all citizens of the state of New York, and the National Bank of Commerce, the St. Louis Transit Company, and the United Railways Company, corporations of the state of Missouri. The summons required the defendants to appear and answer on the first Monday of December, 1904. On the 2d day of November, 1904, James Brown and the defendant corporations appeared and presented motions

relative to the issue of an injunction sought by the complainants. On November 17, 1904, the defendant James Brown filed a petition for the removal of this suit to the Circuit Court of the United States for the Eastern District of Missouri on the ground that it involved a separable controversy between the members of the firm of Brown Bros. & Co. and the complainants. A petition for removal which is filed before the time fixed by the statutes or rules of court for the interposition of the answer to the bill is in time; and the appearance of the petitioner, and his hearing upon preliminary motions regarding injunctions, attachments, and other provisional remedies, do not waive his right to removal. Sidway v. Missouri Land & Live Stock Co. (C. C.) 116 Fed. 381, 394, and cases there cited; Garrard v. Silver Peak Mines (C. C.) 76 Fed. 1.

The only question remaining is, was there a separable controversy which rendered the suit removable? So far as the facts set forth in the bill are material to this question, they are these: The complainants were the owners of 11,000 shares of the stock of the St. Louis Transit Company. The transit company was the owner of a large amount of stock and bonds, which were pledged to secure the payment of a debt of about $7,000,000 which it owed. The transit company and the United Railways Company, through the votes and influence of Brown Bros. & Co., adopted a certain plan of reorganization. One of the terms of this plan was that each stockholder in the transit company should be permitted to contribute, in proportion to the amount of his stock, to the payment of this debt of $7,000,000, and should receive such a portion of the pledged stocks and bonds of the transit company as the amount contributed should bear to the whole debt of $7,000,000. Brown Bros. & Co. made a contract with the transit company and the railways company that they would carry into effect this plan, and thus vest in these various stockholders their respective shares of the pledged stock and bonds. The complainants' share of the $7,000,000 required to pay the debt was $446,160, and consequently their share of the pledged stocks and bonds was approximately one-sixteenth of the whole. Brown Bros. & Co. allotted to the complainants their proper share, and appointed the National Bank of Commerce their agent to receive the contributions of all the stockholders. They notified the complainants to pay to the Bank of Commerce 84 per cent. of their contribution, and the complainants tendered the payment of this amount to the bank. Before this tender was made, Brown Bros. & Co. had prepared a contract between themselves and the stockholders who should contribute to the payment of this debt, which provided that Brown Bros. & Co. should receive rights and advantages relative to the pledged securities to which they were not entitled under their contract with the railroad corporations, and that the contributors should deprive themselves of rights and privileges which lawfully belonged to them, and had instructed their agent, the bank, to accept no contribution until the contributor signed this contract. The bank accordingly presented the contract to the complainants, and demanded their signature, as a condition of its receipt of their con-

tribution. The complainants refused to sign. The bank refused to accept their contribution. The bank now makes claim that, after it refused the tender of the payment by the complainants, it paid the amount which had been allotted to them to pay, and that, unless the complainants will sign and become parties to the contract demanded by Brown Bros. & Co., the bank will claim for itself all the benefits of its payment. But the bank had no authority to act for the complainants in the matter, and could acquire, according to the averments of the bill, no rights to the securities belonging to the complainants by any such action. Brown Bros. & Co. threaten to allot the share of the complainants in the payment of the debt and in the pledged securities to some other person who will sign their contract. Brown Bros. & Co. induced the transit company, the United Railways Company, and their stockholders to adopt the scheme of reorganization by misrepresentation, deception, and fraud.

The bill prays that all proceedings in the attempted reorganization of the corporations be avoided for fraud, that Brown Bros. & Co. and the Bank of Commerce be required to deliver up to the complainants their share of the pledged securities upon their payment of their share of the debt, that Brown Bros. & Co. be enjoined from allotting their share to any other party, that the proposed contract which Brown Bros. & Co. presented for their signature be declared fraudulent and of no effect, and that the transit company and the United Railways Company be enjoined from interfering with the complainants' right to their share of the securities.

After the petition for removal had been filed, amendments were made to the bill. But the motion to remand is conditioned by the bill as it read at the time the petition was filed, and for this reason the amendments will be disregarded. The sufficiency of the statements of facts to constitute the causes of action pleaded in the bill is not open to consideration on a motion to remand, and nothing here said intimates any opinion upon that question.

The bill clearly sets forth two controversies or causes of action —one for the avoidance of the scheme and contract of the railroad companies and Brown Bros. & Co. to reorganize those corporations, and another to enforce the specific performance of the contract of Brown Bros. & Co. to convey to and vest in the complainants their share of the pledged securities of the transit company. There is no claim that the controversy and cause of action relative to the enforcement of the specific performance of the contract of Brown Bros. & Co. does not present a separable controversy and a distinct cause of action. The only question is whether it presents a controversy wholly between citizens of different states, which may be finally determined as between them.

All parties who are not indispensable to the determination of a suit in the federal court may be dismissed or disregarded if their presence would oust or interfere with the jurisdiction of that court. Hence, in the determination of questions involving the jurisdiction of the federal court, and the rights of petitioners to remove suits to that court, indispensable parties alone require consideration.

Geer v. Mathieson Alkali Works, 190 U. S. 428, 432, 23 Sup. Ct. 807, 47 L. Ed. 1122; Bacon v. Rives, 106 U. S. 99, 104, 1 Sup. Ct. 3, 27 L. Ed. 69; Wormley v. Wormley, 8 Wheat. 421, 451, 5 L. Ed. 651; Wood v. Davis, 18 How. 467, 475, 15 L. Ed. 460; Sioux City Terminal R. & W. Co. v. Trust Co. of North America, 82 Fed. 124, 126, 27 C. C. A. 73, 75. There is no allegation in the bill that the railroad corporations have done or threaten to do any act in violation of, or to prevent the performance of, the contract of Brown Bros. & Co.; and there is no prayer in the bill for any decree that they, or either of them, shall make any conveyance or take any step toward the execution of that agreement. There is a prayer for an injunction to forbid them from doing any act or taking any step to interfere with the rights of the complainants, but it stands without averment or recital of any fact to sustain it. The railroad corporations, therefore, are not made by the allegations of this bill indispensable parties to the controversy and cause of action for the enforcement of the contract of Brown Bros. & Co. Nor is any such claim seriously made by counsel for the complainants.

But counsel argues with great ability and force that the Bank of Commerce is an indispensable party to this cause of action, and in support of his contention he cites Wilson v. Oswego Township, 151 U. S. 56, 14 Sup. Ct. 259, 38 L. Ed. 70; Barth v. Coler, 60 Fed. 466, 9 C. C. A. 81; Powers v. Chesapeake & Ohio Ry. Co., 169 U. S. 92, 97, 18 Sup. Ct. 264, 42 L. Ed. 673; Chesapeake & Ohio Ry. Co. v. Dixon, 179 U. S. 131, 21 Sup. Ct. 67, 45 L. Ed. 121; Torrence v. Shedd, 144 U. S. 527, 12 Sup. Ct. 726, 36 L. Ed. 528; and other cases. Before entering upon the discussion of the opinions in these cases, it is well to fix in mind the nature of the cause of action, and the statements of the bill concerning it. This cause, when reduced to its lowest terms, is for the specific performance of an agreement which Brown Bros. & Co. made with the two railroad corporations for the benefit of the complainants, to the effect that they should receive one-sixteenth of the pledged securities upon payment of one-sixteenth of the debt of $7,000,000. The complainants aver that Brown Bros. & Co. refused to perform without just cause; that their excuse that the complainants will not sign the burdensome contract which they present is without merit; and they ask a decree that Brown Bros. & Co. shall convey and deliver to them their one-sixteenth of the pledged securities. The controversy between them is whether or not the complainants are legally entitled to this delivery and conveyance upon the payment of their share of the debt, without signing the contract demanded by Brown Bros. & Co. The determination of this controversy is conditioned entirely by the terms of the contract which Brown Bros. & Co. have made with the railroad companies. If by the terms of that contract the complainants are entitled to this share without signing the agreement requested, they are entitled to the relief which they seek by this cause of action. And if by the terms of that contract with the railroad companies they are not entitled to this conveyance, this cause of action fails. The National Bank of Commerce was not a party to this contract. It was but the agent of Brown Bros. & Co.

to do its bidding in the receipt of the contributions. After the controversy had arisen, and after the complainants had refused to sign the contract with Brown Bros. & Co., and the latter had refused to receive or permit the bank to receive their contribution, the bill alleges that the bank claimed that it paid the contribution allotted to the complainants, and that, unless they sign the agreement with Brown Bros. & Co., the bank will claim the benefit of this payment, but that it acquired no right to any share in the securities which belonged to the complainants by this action. How, then, was the bank an indispensable party to the determination of the question between the complainants and Brown Bros. & Co.— whether or not the latter's contract required Brown Bros. & Co. to convey and deliver the one-sixteenth of the pledged securities to the complainants upon the payment of their share of the debt without farther exactions?

In Wilson v. Oswego Township, 151 U. S. 56, 14 Sup. Ct. 259, 38 L. Ed. 70, bonds were deposited with the Union Savings Association, to be delivered upon the completion of a railroad. A controversy arose between claimants regarding their delivery. A suit was brought, to which the claimants and the association were parties. The court held that the association was an indispensable party to the suit, because it was the bailee or trustee in possession of the property. The decision has no relevancy to the issue in this suit, because the National Bank of Commerce has no possession or control of the pledged securities; and the only rational inference from the averments of the bill is that they are still in the possession and control of the creditors of the transit company to whom they were pledged, and who are not parties to this suit.

In Barth v. Coler, 60 Fed. 466, 9 C. C. A. 81, the allegations of the bill, which was exhibited by the owner of the equity of redemption in property which had been sold by the sheriff to set aside the conveyance he had made to the purchaser, were that the sheriff and purchaser had fraudulently conspired together to make the sale and to execute the deed. The rule is familiar and conceded that suits for joint trespass (Little v. Giles, 118 U. S. 596, 601, 7 Sup. Ct. 32, 30 L. Ed. 269), for joint negligence (Chesapeake & Ohio Ry. Co. v. Dixon, 179 U. S. 131, 21 Sup. Ct. 67, 45 L. Ed. 121; Powers v. Chesapeake & Ohio Ry. Co., 169 U. S. 92, 97, 18 Sup. Ct. 264, 42 L. Ed. 673), and for the breach of a joint contract (Railroad Co. v. Ide, 114 U. S. 52, 5 Sup. Ct. 735, 29 L. Ed. 63) may not, by the denial of joint liability by the defendants, or by the presentation of separate defenses, be resolved into separable controversies, because, where the cause of action may be joint or several, the plaintiff may select and state in his pleadings the basis upon which he sues; and it is not competent for the defendants, by interposing separate defenses, to make a controversy several which the pleadings of the plaintiff show to be joint. But this rule is inapplicable to the case at bar, because the bill itself discloses the fact that the cause of action against Brown Bros. & Co. and the National Bank of Commerce is not joint. It is based upon the contract of Brown Bros. & Co., in which the Bank of Commerce never joined, and to

which it is not a party. Strike down the contract of Brown Bros. & Co., and there is no cause of action against them or the bank, because, in the absence of that contract, they would all be free to dispose of the pledged securities which they might purchase to such persons and on such terms as they might elect. The sine qua non of the cause of action is the contract, and, so far as Brown Bros. & Co. and the Bank of Commerce are concerned, that contract is the several contract of the former, and it is not the contract of the latter.

In Torrence v. Shedd, 144 U. S. 527, 12 Sup. Ct. 726, 36 L. Ed. 528, a suit in partition was commenced, and in the course of its progress a controversy arose between several of the parties to that suit over the title to an undivided share of the property which was the subject of the suit. The court properly held that inasmuch as the purpose of the suit was to administer the entire estate described in the bill, to determine the claims and rights of all the parties to it, and to distribute it to them in kind or in proceeds, in severalty, this controversy was a part of that indivisible suit, and could not be properly separated from it. But neither the suit at bar nor the cause of action under consideration seeks to administer the pledged securities and to distribute them to their rightful claimants, so that the decision in Torrence v. Shedd is not applicable here.

The act of Congress provides that a suit of the nature of that in hand may be removed to the federal court when there shall be a controversy in it which is wholly between citizens of different states, and which can be fully determined as between them. In Barney v. Latham, 103 U. S. 205, 214, 26 L. Ed. 514, the complainants exhibited a bill against certain individuals and a corporation. The charge of the bill was that the complainants were, in equity, the owners of $1/37$ of certain lands earned by the construction of a railroad; that the individuals had sold some of the lands, and received proceeds of such sale to the amount of $129,500, $1/37$ of which belonged to the complainants; and that the individual defendants had caused the title to the remainder of the lands to be vested in the corporation. The Supreme Court held that the controversy between the complainants and the individual defendants, notwithstanding the fact that they were stockholders of the corporation, was separable from that between the complainants and the corporation, and said:

"With that controversy the land company, as a corporation, has no necessary connection. It can be fully determined as between the parties actually interested in it without the presence of that company as a party in the cause."

The cause of action against Brown Bros. & Co. to enforce their contract with the railroad corporations, and to compel them to convey and deliver to the complainants their one-sixteenth of the pledged securities, could have been maintained without the presence of the National Bank of Commerce. It was not a party to that contract. It had no possession or control of any of the pledged securities, and its presence in court was not necessary to a complete adjudication of the controversy which conditioned this cause

of action. Nor could the complainants, by naming it as a party in their bill, by asserting that it made a claim to have contributed to the payment of the debt of the transit company and to a share of the pledged securities, nor by a prayer for a conveyance and delivery by it of property over which it had no control, make it a party to the contract of Brown Bros. & Co., which conditioned the cause of action and the controversy between the complainants and the latter. Nor was the prayer for an injunction against the bank more material or effective because an injunction against Brown Bros. & Co. would necessarily have all the effect of an injunction against the bank, since the former controlled, and the latter had no possession or control of the property in controversy. The conclusion is that the controversy between the complainants and Brown Bros. & Co. over the question whether or not the contract of the former with the railroad corporations required them to convey and deliver to the latter approximately the one-sixteenth of the pledged securities of the transit company upon the payment of a corresponding share of the $7,000,000, without exacting farther agreements, or stipulations from them, was a controversy wholly between Brown Bros. & Co., citizens of New York, and the complainants, citizens of Missouri, which can be fully determined as between them; that the National Bank of Commerce has no part or lot in that controversy; and that it is not an indispensable party to the cause of action which it conditions. Blake v. McKim, 103 U. S. 336, 338, 26 L. Ed. 563; Hyde v. Ruble, 104 U. S. 407, 409, 26 L. Ed. 823; Geer v. Mathieson Alkali Works, 190 U. S. 428, 432, 23 Sup. Ct. 807, 47 L. Ed. 1122; Gudger v. Western N. C. R. Co. (C. C.) 21 Fed. 81, 83; Youtsey v. Hoffman (C. C.) 108 Fed. 693, 698; Lamm v. Parrot Silver & Copper Co. (C. C.) 111 Fed. 241.

The motion to remand must be denied, and it is so ordered.